UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROSE MARIE (FIORE) DIANA,
*Vet. Salvatore Raymond Fiore (estate of); Sp. Patricia*
*DeLores (Fiore) Gaetano (estate of)*,

                              Plaintiff,

                                                    6:17-cv-0376
v.                                                  (MAD/TWD)


SEAN J. STACKLEY, et al.,

                              Defendants.
_____

APPEARANCES:

ROSE MARIE (FIORE) DIANA
Plaintiff, *pro se*
8593 Aitken Avenue
Whitesboro, NY 13492


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge


                    **ORDER AND REPORT-RECOMMENDATION**

         The Clerk has sent to the Court for initial review a complaint, together with an

application to proceed *in forma paupers* ("IFP Application") filed by *pro se* Plaintiff Rose Maria

(Fiore) Diana.  (Dkt. Nos. 1 and 2.)  Plaintiff names Sean J. Stackley, Secretary of Navy;

Department of Veterans Affairs ("VA"); V.A. Hospital of Syracuse, NY; Utica State Hospital;

City of Utica Civil Service Department; City of Utica Fire Department; Oneida County Veterans

Service Offices; Oneida County Department of Social Services; Delta Airlines Inc. ("Delta");

Pan American International Flight Academy ("Pan Am"); NYS Office of Attorney General; U.S.

Navy (the "Navy"); and Federal Aviation Administration, also known as Bureau of Aeronautics

as Defendants. (Dkt. No. 1 at 2-5.[1]) Plaintiff asserts federal question subject matter jurisdiction. *Id*. at 4.

Generally, Plaintiff alleges that her deceased father, Salvatore Raymond Fiore, was a member of the Navy and was involved in rescue efforts involving a Pam Am plane crash in 1944. *Id*. at 6. Her father sustained serious physical and emotional injuries. *Id*. However, because the accident was "classified" her father was repeatedly denied veteran's disability benefits. *Id*. Plaintiff claims that she has suffered physical and emotional abuse and is entitled to helpless child benefits. *Id*. Plaintiff also claims her deceased mother, Patricia DeLores (Fiore) Gaetano suffered from mental and physical abuse as a result of her father's "PTSD and shell shock." *Id*. Plaintiff brings this action arguing that:

> The U.S. Navy should pay what they owed my father for his suffering in the form of what he should have received from the VA, but for the confidential classification making this accident invisible and rendering Pam Am the cause of this action untouchable, through a tort claim (PVA) or court marital proceedings.

*Id*. (unaltered text).

## I.  IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP Application, the Court finds that she meets this standard. Therefore, Plaintiff's IFP Application (Dkt. No. 2) is granted.

---

[1] Page references identified by docket number are to the page number assigned by the Court's CM/ECF electronic docketing system.

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. §

1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case

at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to

state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua*

*sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil

Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    PLAINTIFF'S COMPLAINT

Plaintiff alleges that on July 31, 1944, her father "was a member of the United States Navy and involved in a plane crash in the Marshall Islands located in the Pacific Ocean near the Funifutti Atoll." (Dkt. No. 1 at 9, ¶ 5.[2]) (unaltered text). Pan Am was flying the plane. *Id*. at ¶ 6. "They covered up or botched the investigation along with the Navy and Bureau of

---

[2] The facts in this case are set forth at pages 9 through 12 of the complaint, in consecutively numbered paragraphs. (*See* Dkt. No. 1 at 9-5.)

Aeronautics, aka F.A.A., classified this crash and barred [her] father from talking about this incident altogether under threat of court martial." *Id.* As such, Plaintiff's "father was denied health care, VA benefits, and/or [Federal Tort Claims Act ("FTCA"), 42 U.S.C. §1346] compensation from Pan Am who caused the accident that resulted in his permanent disabilities which he had until the day he passed away." *Id.*

Plaintiff alleges "[t]his criminal activity" was "never brought forward and prosecuted through trial or court martial violating [her] father's rights of the 6th Amendment." *Id.* She further claims that "[t]he classification violated his 1st Amendment of Freedom of Speech" and "due process 14th Amendment rights to substantive property interest in the benefits and/or tort claim again Pam Am." *Id.* Plaintiff alleges her father "sustained serious injuries and was treated for many years." *Id.* Although Plaintiff does not have her father's medical records, she notes that "many people and relatives" will "testify to these physical and mental disabilities that [her] father suffered from." *Id.*

Plaintiff's father left the Navy in 1947, and began applying for veteran's benefits in 1948. *Id.* at ¶¶ 7, 9. Plaintiff claims that as a result of her father's "exemplary rescue efforts" involving the Pan Am plane crash, he suffered from a "serious skin condition" and "shell shock/plane/ship collision effects." *Id.* at ¶ 9. Although her father's claim was denied as "not service connected," Plaintiff alleges "this" was part of the "corporate cover up." *Id.*

In 1947, Plaintiff's father met Patricia DeLores (Fiore) Gaetano. *Id.* at ¶ 7. Plaintiff was born in 1949. *Id.* During the time that Plaintiff's mother was pregnant, her father was abusive. *Id.* at ¶ 8. Plaintiff's father was arrested for domestic abuse two days before she was born. *Id.* Plaintiff suffers from a "misshapen vertebrae" in her lower back. *Id.*

In 1956, Plaintiff's mother applied for an annulment because she "could not deal with [her father's] service connected disabilities because the VA kept refusing him the care he needed . . . that they promised him when he joined the Navy." *Id*. at ¶¶ 10-11. Plaintiff argues, however, that the annulment should not have been granted "because there were children in the marriage which would delegitimize [them]." *Id*. at ¶ 10. In any event, the annulment states "religious reasons," which is "fraudulent." *Id*. at ¶ 11.

Plaintiff's father was hospitalized at Utica State Hospital in 1956 for "psychiatric issues that were diagnosed as schizophrenia." *Id*. at ¶ 12. She alleges that it "was malpractice to give the wrong medicine as PTSD requires antidepressant, not thorazine! Again, 'not service connected' according to the VA." *Id*.

Her father's application for veteran's benefits was denied again in 1958. *Id*. at ¶ 13. In 1983, her father's application for veteran's benefits was denied "because he could not divulge the cause of his injuries because of the 'Classification of Confidential' on the Pan Am crash which was the crux of his service connected disabilities and proof of his eligibility." *Id*.

In 2008, "immediately upon discovery of this revolting development which ruined [her] life, [Plaintiff] filed a claim in the Court of Claims to obtain [her] Helpless Child Benefits and amend [her] father's records." *Id*. at ¶ 14. In August 2009, a hearing was held in Washington, DC, and the "VA ruled that [Plaintiff] was not entitled to the benefits because of marital status at that time." *Id*. at ¶ 15. Plaintiff "asked the VA to amend [her father's] records to acknowledge his disabilities as service connected." *Id*.

Plaintiff claims that the hearing officials in Washington, DC "knew his case was under

the SIAA Act[3] as it was a maritime tort but ignored the eligibility of the claim to continue to

degrade [her] father and perpetuate the suffering that surrounded [her] father and family for years

because of corporate gain." *Id.* at ¶ 16. Plaintiff explains that:

> This application for benefits in 2008 equates to this claim for
> damages as my father's records would have to be eligible by
> amendment to make his disabilities service connected, then and
> only then would I be able to get my Helpless Child Benefits or tort
> claim damages from Pan Am in consortium for my father not being
> able to take care of my needs because of Pan Am's and et. al
> negligence.

*Id.* (unaltered text). Plaintiff states that she is the Administrator/Executor of the estates of her

father and mother and "wants this part of the record." *Id.* at ¶ 18.

In 2016, Plaintiff filed a "Notice of Claim" with the Department of the Navy, seeking

$20,000,000.00 in damages, which was denied as "out of the Statute of Limitation." *Id.* at ¶ 17.[4]

As set forth in the October 6, 2016, letter of denial:

> Your claim was reviewed by the Deputy Assistant Judge Advocate
> General (Admiralty and Maritime Law). Under the Suits in
> Admiralty Act (SAA) and Public Vessels Act (PVA), a claim must
> be filed in the appropriate court within two years after it accrues.
> According to your own admission, your claim accrued by 2008.
> As such, you had until 2010 to file suit in the appropriate Federal
> district court under the SAA and PVA. Therefore, to the extent
> that your claim constitutes an admiralty claim, it is denied as
> beyond the statute of limitations.

---

[3] Plaintiff is likely referring to the Suits in Admiralty Act, 46 U.S.C. § 741, which waives the
United States' sovereign immunity and authorizes certain suits in admiralty which could be
maintained if the claim were brought against a private party. *See* 42 U.S.C. 742; *Saint John
Marine Co. v. United States*, 92 F.3d 39, 43-44 (2d Cir. 1996).

[4] Plaintiff has attached copies of the Form 95 complaint (File No. J161730) (without exhibits),
the September 14, 2016, letter acknowledging receipt thereof, and the October 6, 2016, letter of
denial. *Id.* at 13-15.

> Your claims was also analyzed under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2401(b), and 2671-2680. Our investigation has determined that United States is not liable under the FTCA for the damages claim. A claim against the United States under the FTCA is forever barred unless presented in writing to the appropriate Federal agency within two years of the date such claim accrued. *See* 28 U.S.C. § 2401(b). Your claim accrued at the latest, according to your own submission, by 2008. Accordingly, any FTCA claim had to be filed with the Department of Navy no later than 2010. Your FTCA claim was filed on September 8, 2016. Your FTCA claim is untimely and is hereby denied.

*Id*. at 15.

Based on the above, Plaintiff states two causes of action. First, Plaintiff claims she is entitled to helpless child benefits under the Veterans Administration Act, FTCA compensation for her father, mother, and herself, and her father's VA benefits retroactively. *Id*. at ¶ 20. She alleges that had it not been for Defendants' actions in refusing to find her father's conditions service related, Plaintiff "would have been entitled to these benefits and tort claim compensation from the unwarranted classification." *Id*. at ¶¶ 19-22.

Second, Plaintiff alleges that the Navy, the VA, and the VA Hospital are all liable under the FTCA, along with all other Defendants, "as each and every one had a hand in this injustice and the damages that occurred to [her] family." *Id*. at ¶ 23. Plaintiff claims Defendants "owed [her] father a duty of care which they breached when they refused to assist him in receiving benefits under the Veterans Administration." *Id*. at ¶ 24. According to Plaintiff, because her father was "barred from speaking about the plane crash which was the catalyst for all of his injuries . . . he could never be fully honest about all of the things that happened to him, and in turn was not able to get help or compensation for his injuries." *Id*. at ¶ 25.

Lastly, "Plaintiff would like noted that the *Feres Doctrine* should not be applied to the instant case." *Id*. at ¶ 26.[5]

Plaintiff seeks judgment awarding her "any benefits that [her] father and [Plaintiff] would have been entitled to under the Veterans Administration Act (whatever those are calculated to be) and damages to [her] mother as well." *Id*. Plaintiff also seeks any costs, fees, and disbursements, along with any other relief the Court deems just, equitable, and proper. *Id*.

## IV.    ANALYSIS

This is not Plaintiff's first lawsuit filed in this District against Defendants arising out of the 1944 plane crash and the subsequent denial of her father's veteran's disability benefits and Plaintiff's helpless child benefits. *See Diana v. U.S. Navy, et al.*, No. 6:10 CV-0547 (DNH/DEP) ("*Diana I*"); *Diana v. Mabis*, *et al.*, No. 6:15-CV-0964 (GLS/ATB) ("*Diana II*").

### A.    *Diana I*

In *Diana I*, Plaintiff's original complaint was filed May 11, 2010, on a standard form used for civil rights actions pursuant to 42 U.S.C. § 1983 against the Navy, the VA, the VA Hospital, and Utica State Hospital. (*See generally Diana I*, Dkt. No. 1.) Plaintiff also alleged state tort claims for fraud, negligence, malpractice, and intentional infliction of emotional distress. *Id*. Upon initial review, United States District Judge David N. Hurd explained:

> It appears that plaintiff is the daughter of Salvatore R. Fiore ("Mr. Fiore") a deceased veteran of the Navy who was involved in a plane crash in July 1944, which resulted in physical and emotional injuries. Though not entirely clear, the essence of plaintiff's claims seems to be that the Navy withheld information as

---

[5] Plaintiff is likely referring to the *Feres Doctrine* of "intra-military immunity" which bars a lawsuit under the FTCA for injuries to service members where the injuries arise out of or in the course of activities which are incident to their military service. *Feres v. United States*, 340 U.S. 135, 146 (1950). "The doctrine applies not simply to suits brought by members of the armed forces, but also to claims made by their families." *Veloz-Gertrudis v. United States*, 768 F. Supp. 38, 40 (E.D.N.Y. 1991).

> confidential, with regard to the plane crash, thus preventing Mr.
> Fiore from obtaining veteran's disability benefits, and violating
> both his procedural and substantive due process rights. As relief,
> plaintiff seeks "all benefits for the vet. & family that should have
> been allowed[.]

*Id*., Dkt. No. 4 at 1-2.

By Decision and Order dated October 6, 2010, the Court dismissed Plaintiff's original complaint with leave to amend on the grounds that: (1) Plaintiff lacked standing to pursue a claim on behalf of her father's estate; (2) that she had failed to a state claims under *Bivens v. Six Unknown Named Agent of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. § 1983; and (3) the Court lacked jurisdiction to entertain Plaintiff's claims since Section 511(a) of the Veteran's Judicial Review Act precludes judicial review of a determination by the Veteran's Administration on a claim for benefits. *Id*. at 2-4.

Plaintiff filed an amended complaint on December 13, 2010. *Id.*, Dkt. No. 7. The amended complaint stated two separate causes of action. In the first cause of action, Plaintiff claimed that if her father had not been denied benefits she would have been entitled to helpless child benefits. *Id*. at ¶¶ 34-37. As a second and separate claim, Plaintiff alleged that Defendants breached their duty of care to her father by failing to assist him in receiving veteran's benefits. *Id*. at ¶ 40. Plaintiff alleged that the Defendants were liable for such breach under the FTCA. *Id*. at ¶ 39. Upon review of the amended complaint, Judge Hurd found that:

> Although plaintiff seems to have shifted the focus from benefits
> she claimed her father should have received to her own alleged
> entitlement to "helpless child" benefits, the amended complaint
> exhibits the same fundamental defect as her original complaint—
> her claim remains one for veteran's benefits. Plaintiff now alleges
> that she applied for helpless child benefits, received a hearing on
> that application in August 2009, and was denied benefits because
> of her marital status.

*Id*., Dkt. No. 9 at 2-3.

With regard to the first cause of action, the District Court reiterated that it lacks jurisdiction to entertain claims relating to veteran's benefits. *Id*. at 3 (citing 38 U.S.C. § 511(a); *Pappanikoloaou v. Administrator of Veterans Admin*, 762 F.2d 8, 9 (2d Cir. 1985) (per curiam), *cert. denied*, 474 U.S. 851 (1985); *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1500 (2d Cir. 1992) (§511(a) "precludes judicial review of non-facial constitutional claims") (collecting cases)). As to the second cause of action, the District Court explained that Plaintiff could not avoid the effect of Section 511(a) merely by recasting her claim as one brought pursuant to the FTCA. *Id*. (citing *DiSilvestro v. United States*, 181 F. Supp. 860, 861 (E.D.N.Y. 1960), *cert. denied*, 364 U.S. 825 (1960)).

Therefore, Plaintiff's amended complaint was *sua sponte* dismissed for failure to state a cognizable claim pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id*. at 4. Judgment was entered February 8, 2011. *Id*., Dkt. No. 10.

On November 4, 2011, the Second Circuit Court of Appeals dismissed Plaintiff's appeal "because it lacks an arguable basis in law or fact." *Id.*, Dkt. No. 15 (citing 28 U.S.C. § 1915(e); *Neitzke*, 490 U.S. at 325 (defining when an action lacks an arguable basis in law or fact)).

**B.    *Diana II***

In 2015, Plaintiff commenced *Diana II* against Raymond Mabis, the Secretary of the U.S. Navy; the VA; Utica State Hospital; the State of New York Civil Service Commission; the City of Utica Civil Service Commission; the County of Oneida Department of Social Services; Pan Am Airlines "and their successors;" the County of Oneida Vet Service Agency; the U.S. Bureau of Aeronautics; the U.S. Department of the Navy; and the VA Hospital in Syracuse, New York alleging: (1) violation of her father's Sixth Amendment trial rights, resulting in a violation of Plaintiff's Sixth Amendment rights as his infant child; (2) violation of both Plaintiff's and her

father's Fourteenth Amendment due process right to a trial (court marital) and availability of VA

benefits for both of them; and (3) violation of the American with Disabilities Act by all

defendants "as a *pro-se* litigant."  (*Diana II*, Dkt. No. 1 at 1-3.)

Upon initial review, United States Magistrate Judge Andrew T. Baxter found that

"although plaintiff has embellished her description of the facts, she is essentially suing over the

same issues as she raised in [*Diana I*]."  *Id.*, Dkt. No. 4 at 7.  To wit:

> Plaintiff seeks to hold all the defendants liable based on a "domino
> effect."  Plaintiff claims that because the Navy did not afford
> plaintiff's father a court marital, he could not prove that Pan Am
> was at fault for the crash resulting in the stress and mental illness
> suffered by her father, resulting in his inability to care for her,
> resulting in her disability and failure to obtain helpless child
> benefits.  As Judge Hurd stated in [*Diana I*], Plaintiff is still
> seeking a remedy for the denial of veteran's benefits, but has been
> told that this court has no jurisdiction to entertain claims relating to
> veteran's benefits."

*Id.*

Judge Baxter found "[i]t is clear that plaintiff is simply trying a different basis and suing

different defendants to obtain what she could not obtain in her prior action.  The courts do not

acquire jurisdiction to hear challenges to benefits determinations merely because those

challenges are cloaked in constitutional terms."  *Id.* at 9 (citing *Melvin v. U.S. Dep't of Veterans

Affairs*, 70 F. Supp. 3d 350, 360-61 (D.D.C. 2014) (citing *Pappanikoloaou*, *supra*); *Fahie v.

Dep't of Veterans Affairs*, 39 F. Supp. 2d 332, 334 (S.D.N.Y. 1999) (citations omitted)).

Therefore, it was recommended that *Diana II* be dismissed in its entirety pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii-iii) as frivolous and for failure to state a claim.[6]  *Id.* at 13.  It was also

---

[6]  Specifically, Judge Baxter found that to the extent Plaintiff was attempting to re-litigate the
claim for veteran's benefits, the claim must again be dismissed for lack of jurisdiction.  (*Diana
II*, Dkt. No. 4 at 12.)  To the extent that Plaintiff raised different or more detailed facts in an
attempt to link Defendants' actions to injuries that she suffered during her entire life, the

recommended that the District Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from the District Court's order would not be taken in good faith.  *Id.*

The District Court adopted the report-recommendation in its entirety.  *Id.*, Dkt. No. 11. On April 5, 2016, judgement was entered in favor of Defendants.  *Id.*, Dkt. No. 12.  On October 26, 2016, the Second Circuit Court of Appeals dismissed Plaintiff's appeal because "it lacks an arguable basis either in law or fact."  *Id.*, Dkt. No. 17 at 1 (citing *Neitzke*, 490 U.S. at 325 (1989) and 28 U.S.C. § 1915(e)).

## C.    Subject Matter Jurisdiction

A federal court has an independent obligation to determine whether subject matter exists, even in the absence of a challenge to jurisdiction by a party.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).  When a court lacks subject matter jurisdiction, dismissal is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  Therefore, although courts "construe a *pro se* plaintiff's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action."  *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005) (internal citation omitted).

As Judge Hurd explained in the October 6, 2010, Decision and Order in *Diana I*, the Veteran's Judicial Review Act authorizes the secretary of the VA to determine benefits questions and precludes district court review of such decisions, *Thomas v. Principi*, 394 F.3d 970, 971 (D.C. Cir. 2005), providing that:

> The Secretary shall decide all questions of law and fact necessary
> to a decision by the Secretary under a law that affects the provision

---

complaint should be dismissed as frivolous and for failure to state a claim.  *Id.*  Further, Plaintiff's attempt to allege that the court somehow violated her rights under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, was completely conclusory.  *Id.*

> of benefits by the Secretary to veterans or the dependents or
> survivors of veterans.  Subject to subsection (b), the decision of the
> Secretary as to any such question shall be final and conclusive and
> may not be reviewed by any other official or by any court, whether
> by an action in the nature of mandamus or otherwise.[7]

(*Diana I*, Dkt. No. 4 at 10-11 (quoting 38 U.S.C. § 511(a)).  The purpose of this provision is to

insulate courts and the VA from veteran's benefits litigation and ensure uniformity in

determinations of benefits and application of VA policy.  *Sugrue v. Derwinski*, 26 F.3d 8 (2d Cir.

1994) (citing *Johnson v. Robison*, 415 U.S. 361-369-70 (1974)).  Thus, "the courts do not

acquire jurisdiction to hear challenges to benefits determinations merely because those

challenges are cloaked in constitutional terms."  *Pappanikoloaou*, 762 F.2d at 9 ("one may not

circumvent § [5]11(a) by seeking damages on a constitutional claim arising out of a denial of

benefits); *see also Derwinski*, 968 F.2d at 1500 (2d Cir. 1992) (§511(a) "precludes judicial

review of non-facial constitutional claims") (collecting cases).

Plaintiff has been told in each of her prior actions that this Court has no jurisdiction to

entertain claims relating to veteran's benefits.  (*Diana I*, Dkt. Nos. 4 and 9; *Diana II*, Dkt. No. 4.)

Further, Judge Hurd has explained that Plaintiff "cannot avoid the effect of Section 511(a)

merely by recasting her claim as one brought pursuant to the FTCA."  (*Diana I*, Dkt. No. 9 at 3.)

Judge Baxter has explained that "the courts do not acquire jurisdiction to hear challenges to

benefits determinations merely because those challenges are cloaked in constitutional terms."

(*Diana II*, Dkt. No. 4 at 9.)  The Second Circuit Court of Appeals dismissed each of Plaintiff's

---

[7]  Judge Hurd noted that certain exceptions to this provision are set out in Section 511(b), none
of which are applicable.  (*Diana I*, Dkt. No. 4 at 11 n.3.)  Section 511(b)(1) relates to judicial
review of rules and regulations to which reference is made by 5 U.S.C. § 552(a)(1) or 553
(regarding rules and regulations that federal agencies are required to promulgate by the Freedom
of Information Act), and such review is only available in the Court of Appeals for the Federal
Circuit.  Section 502(b)(2) provides an exception for civil actions relating to health insurance.
Section 502(b)(3) provides an exception relating to housing and small business loans.

appeals as "lack[ing] an arguable basis in law or fact." (*Diana I*, Dkt. No. 15; *Diana II*, Dkt. No. 17.)

And yet Plaintiff has commenced a third action seeking a remedy for the denial of veteran's benefits. (*See* Dkt. No. 1 at 12 ("Plaintiff demands judgment . . . [a]warding . . . any benefits that my father and I would have been entitled to under the Veteran's Administration Act (whatever those are calculated to be) and damages to my mother as well.").)

Thus, for the reasons explained in *Diana I* and *Diana II*, to the extent Plaintiff is still seeking a remedy for the denial of her father's veteran's benefits, including her own helpless child benefits, this Court has no jurisdiction to entertain claims relating to veteran's benefits. Moreover, courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms or purportedly brought pursuant to the FTCA.

Based upon the foregoing, the Court finds that there is no federal jurisdiction over Plaintiff's claims and it is recommended that the complaint be dismissed.

## V.    WHETHER TO PERMIT AMENDMENT

Ordinarily, given Plaintiff's *pro se* status, the Court would recommend that she be given an opportunity to amend prior to an outright dismissal. *See Cuoco*, 222 F.3d 112. However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id*. Because lack of subject matter jurisdiction is a substantive defect, *Deuel v. Dalton*, No. 1:11-CV-0637 (GTS/RFT), 2012 WL 235523 at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the Court recommends dismissal without leave to

amend.[8]  Further, as Judge Hurd determined in *Diana I*, "[b]ecause it is clear that what Plaintiff

seeks is review of the VA's denial of benefits, the Court concludes that any further amendment

would be futile."  *(Diana I*, Dkt. No. 9 at 3-4.)  This Court agrees.

     **WHEREFORE**, based on the findings above, it is hereby

     **ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED FOR**

**PURPOSES OF FILING ONLY**; and it is further

     **RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS**

**ENTIRETY** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii-iii) as frivolous and for failure to state a

claim; and it is further

     **RECOMMENDED** that if the District Court adopts this Report-Recommendation, that

the District Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from the

District Court's Order would not be taken in good faith; and it is further

     **ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on

Plaintiff, along with a copy of the unpublished decision cited herein in accordance with the

Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

     Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the

Court.

---

[8]  A copy of this unpublished decision will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[9]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: June 6, 2017
      Syracuse, New York

                                        Thérèse Wiley Dancks
                                        United States Magistrate Judge

2012 WL 235523
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Loriann DEUEL and Lorraine Deuel, Plaintiffs,
v.
Frank T. DALTON; State of New York; New York
State Unified Court System; Philip J. Danaher, Esq.,
as the attorney appointed to act as Law Guardian
for BMD; Catherine Cholakis, as the presiding justice
of the Family Court assigned to this proceeding;
John & Jane Does 1–100, whose identities may or
may not be known but necessary parties to these
proceedings; ABC Corp's 1–100, those entities
whose identities are currently unknown, but
necessary parties to these proceedings, Defendants.

No. 1:11–CV–0637 (GTS/RFT).
|
Jan. 25, 2012.

**Attorneys and Law Firms**

Loriann and Lorraine Deuel, Unionville, TN, pro se.

### *DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court, in this *pro se* civil
rights action filed by Loriann Deuel and Lorraine Deuel
("Plaintiffs") against the above-captioned defendants
(together "Defendants"), are (1) United States Magistrate
Judge Randolph F. Treece's Report–Recommendation
recommending that Plaintiff's Complaint be dismissed,
and (2) Plaintiffs' Objections to that Report–
Recommendation. (Dkt.Nos.4, 5.) For the following
reasons, the Report–Recommendation is accepted and
adopted, and Plaintiffs' Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Complaint
On June 8, 2011, Plaintiffs filed their Complaint
in this action. (Dkt. No. 1.) Generally, in their
Complaint, Plaintiffs allege that Defendants violated their

constitutional right to due process and equal protection
under 42 U.S.C. § 1983 in connection with various custody
proceedings involving Plaintiff Loriann's minor child,
BMD. (Dkt. No. 1 at 4.)

More specifically, construed with the utmost of special
liberality, Plaintiffs' Complaint asserts the following six
claims against Defendants: (1) Defendants New York
State Unified Court System and Cholakis violated, and/
or conspired to violate, Plaintiffs' due process rights under
the Fourteenth Amendment by, *inter alia,* improperly
(a) exercising jurisdiction over Plaintiffs during various
custody proceedings from 2002 to 2004, where no such
jurisdiction existed, (b) failing to notify her of various
of those court proceedings, (c) holding various of those
proceedings in her absence, and (d) awarding Defendant
Dalton custody of BMD, even though Defendant Dalton
had not established paternity; (2) Defendants New York
State Unified Court System and Cholakis violated,
and/or conspired to violate, Plaintiffs' equal protection
rights under the Fourteenth Amendment by denying
Plaintiffs their parental and familial rights; (3) Defendants
New York State Unified Court System, Cholakis and
Danaher committed, and/or conspired to commit, fraud
against Plaintiffs; (4) Defendants New York State Unified
Court System, Cholakis and Danaher suborned, and/or
conspired to suborn, perjury by Defendant Dalton; (5)
Defendant Cholakis, New York State Family Court Judge
committed judicial misconduct against Plaintiffs; and (6)
Defendant Danaher committed professional misconduct
against Plaintiffs. (Dkt. No. 1 at 30–34.)

For a more detailed recitation of Plaintiffs' claims, and
the factual allegations giving rise to those claims, reference
is made to Plaintiffs' Complaint and Magistrate Judge
Treece's Report–Recommendation in their entireties.
(Dkt.Nos.1, 4.)

### B. Magistrate Judge Treece's Report–Recommendation
On July 19, 2011, Magistrate Judge Treece issued a
Report–Recommendation recommending that Plaintiffs'
Complaint be dismissed for the following reasons: (1)
the Court lacks subject-matter jurisdiction over domestic
relations matters, including those related to child custody;
(2) Plaintiffs' claims are barred by the applicable statute
of limitations; and (3) Plaintiff has failed to state a claim
upon which relief can be granted pursuant to 28 U.S.C. §
1915(e)(2). (*See generally* Dkt. No. 4.)

Deuel v. Dalton, Not Reported in F.Supp.2d (2012)

2012 WL 235523

## C. Plaintiffs' Objections to the Report–Recommendation

**\*2**  On August 1, 2011, Plaintiffs filed their Objections to the Report–Recommendation. (Dkt. No. 5.) Generally, liberally construed, Plaintiffs' Objections argue that Magistrate Judge Treece made the following errors: (1) the Court does have subject-matter jurisdiction in this case because the relief requested does not require the Court to "become enmeshed in factual disputes" (Dkt. No. 5 at 3); (2) Plaintiffs have stated a claim under 42 U.S.C. § 1983 because they have adequately alleged Defendants Dalton and Danaher are state actors (Dkt. No. 5 at 4); and (3) the action is not barred by the applicable statute of limitations because the state court "matter has been ongoing for the past seven years." (Dkt. No. 5 at 4.)

In addition, in their Objections, Plaintiffs seek leave to file an Amended Complaint, which Plaintiffs purport would do the following: (1) remove Defendant Cholakis from this action "pursuant to judicial immunity statutes"; (2) "remove the habeas corpus request"; and (3) include recent civil rights violations in an effort "to clear up misunderstandings regarding jurisdiction, timeliness, and the statement of claims." (Dkt. No. 5 at 6.)

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review Governing a Report–Recommendation

When a specific objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1]  When performing such a *de novo* review, the Court "may ... receive further evidence...." 28 U.S.C. § 636(b) (1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [2]

When only a general objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a clear error review. Fed.R.Civ.P. 72(b)(2) and (3);

Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. [3]  Similarly, when an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation to a clear error review. [4]  Finally, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. [5]

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

### B. Legal Authority for Reviewing a Complaint *Sua Sponte*

**\*3**  Under the circumstances, the Court's authority to *sua sponte* review Plaintiffs' Complaint stems from three separate sources. (1) Fed.R.Civ.P. 12(h)(3), which provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss that action"; (2) 28 U.S.C. § 1915(e)(2) (B), which provides that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that—... the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief"; and (3) the Court's inherent power to manage its docket.

With regard to the second of the three above-described authorities, the Court notes that the dismissal of an action as barred by the applicable statute of limitation may fall within the ambit of the Court's power to dismiss a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e). [6]  In addition, the dismissal of an action as duplicative has been found to fall within the ambit of the Court's power to dismiss a complaint which is frivolous or malicious pursuant to 28 U.S.C. § 1915(e). [7]

With regard to the third of the three above-described authorities, it is well settled that a district court has the power to *sua sponte* dismiss *pro se* complaint based on frivolousness. *See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000)* (recognizing that district court has power to *sua*

Deuel v. Dalton, Not Reported in F.Supp.2d (2012)
Case 6:17-cv-00376-MAD-TWD    Document 7    Filed 06/06/17    Page 20 of 25
2012 WL 235523

*sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee. It is also is well settled that "[a]s part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000); *see also Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("As between federal district courts, ... though no precise rule has evolved, the general principle is to avoid duplicative litigation."). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952).[8] The doctrine is also meant to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacob,* 950 F.2d 89, 93 (2d Cir.1991) .[9]

### C. Legal Standard Governing Dismissal Based on Lack of Subject–Matter Jurisdiction

Magistrate Judge Treece correctly recited the legal standard governing a dismissal based on lack of subject-matter jurisdiction in his Report–Recommendation. (Dkt. No. 4 at 2–3.) As a result, that standard is incorporated herein by reference in this Decision and Order.

### D. Legal Standard Governing Dismissal Based on Expiration of Statute of Limitations

**\*4** Magistrate Judge Treece correctly recited the legal standard governing a dismissal based on the expiration of the relevant statute of limitations in his Report–Recommendation. (Dkt. No. 4 at 3–4.) As a result, that standard is incorporated herein by reference in this Decision and Order.

### E. Legal Standard Governing Dismissal Based on Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because Plaintiffs' Complaint is dismissed based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*5** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by

the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

**\*6** This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[10] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[11] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[12]

### F. Legal Standard Governing Dismissal Based on Duplicative Nature of Action

Although no precise test has been articulated for determining whether actions are duplicative, "the general rule is that a suit is duplicative of another suit if the parties, issues and available relief do not significantly differ between the two actions." *I.A. Durbin, Inc. v. Jefferson Nat. Bank,* 793 F.2d 1541, 1551 (11th Cir.1986). "Courts generally look to the identity of the parties, legal claims, factual allegations including temporal circumstances, and the relief sought to determine if the complaint is repetitive or malicious." *Hahn,* 2006 WL 2160934, at *3.

It is worth noting that district courts have broad discretion in determining whether an action should be dismissed as duplicative. *Lopez v. Ferguson,* 361 F. App'x 225, 226 (2d Cir.2010) (affirming dismissal of action as duplicative of a pending class action as to which plaintiff fell within the certified class).[13] There are several approaches to the proper disposition of duplicative actions, including stay of the second action, dismissal without prejudice, and consolidation. *Curtis,* 226 F.3d at 138. In addition, "simple dismissal of the second suit is another common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 138–39.[14]

### G. Legal Standard Governing Dismissal Based on Doctrines of Res Judicata and/or Collateral Estoppel

Claim preclusion, also sometimes referenced to as res judicata, requires that a final judgment of an action on the merits be given preclusive effect, barring parties, as well as those in privity with them, from relitigating claims which were or could have been raised in the prior action. *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286–87 (2d Cir.2002); *see also Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 28 (2d Cir.1986) (citing *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 398 [1981] ), *overruled on other grounds, Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768 (2d Cir.2002).

Issue preclusion, a more narrow doctrine often referred to as collateral estoppel, bars a party that has had a full and fair opportunity to litigate an issue of fact or law from relitigating the same issue once it has been actually and necessarily decided against that party or its privy. *McKithen v. Brown,* 481 F.3d 89, 105 (2d Cir.2007); *Marvel,* 310 F.3d at 288–89.

### III. ANALYSIS

**\*7** As stated above in Part I.C. of this Decision and Order, Plaintiffs' Objections argue that Magistrate Judge Treece made the following errors: (1) the Court does have subject-matter jurisdiction in this case because the relief requested does not require the Court to "become enmeshed in factual disputes" (Dkt. No. 5 at 3); (2) Plaintiffs, indeed, stated a claim under 42 U.S.C. § 1983 because they have adequately alleged Defendants Dalton and Danaher are state actors (Dkt. No. 5 at 4); and (3) the action is not time-barred because the state court "matter has been ongoing for the past seven years." (Dkt. No. 5 at 4.)

In accordance with N.D.N.Y. L.R. 72.1(c), the Court finds the first and second objections are specific in nature because Plaintiffs identified the portions of Magistrate Judge Treece's Report–Recommendation to which they object with particularity, and Plaintiffs cited (albeit improper) legal authority in an effort to support their objections. (*See generally* Dkt. No. 5.) As a result, the Court subjects those portions of Magistrate Judge Treece's Report–Recommendation to which Plaintiffs object to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b) (1) (C).

Plaintiffs' third objection, however, is only general in nature. Although Plaintiffs specifically identify the portion of the Report–Recommendation to which they object, they fail to provide any legal basis for the objection. (*See generally* Dkt. No. 5 at 4–6 .) As a result, the Court reviews that portion of Magistrate Judge Treece's Report–Recommendation to which Plaintiffs object for only clear error. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).

After carefully subjecting Magistrate Judge Treece's Report–Recommendation to the appropriate level of review, the Court finds no error in the Report–Recommendation. Magistrate Judge Treece employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report–Recommendation is accepted and adopted in its entirety for the reasons stated therein. The court would add only five brief points.

First, those portions of Magistrate Judge Treece's Report–Recommendation that the Court has reviewed only for clear error (e.g., the holding that Plaintiffs' claims are barred by the statute of limitations) would survive even a *de novo* review.

Second, Plaintiff's argument that the Court need not "become enmeshed in factual disputes" (and thus it does have subject-matter jurisdiction in this case) is without merit for several reasons. For example, to determine whether Plaintiffs' due process rights were violated, the Court would inevitably have to engage in a factual inquiry regarding the custodial placement of BMD with Defendant Dalton. The Court might, for example, need to evaluate the same facts the state court did in making its custody determination in the first place. Doing so, however, would violate the general rule that domestic relations matters are primarily matters for state courts.

**\*8** Third, Plaintiffs' action appears largely duplicative of two previously filed actions: (1) *Deuel v. Dalton,* 06–CV–0234, Complaint (M.D. Tenn. filed March 23, 2006); and (2) *Deuel v. Dalton,* 11–CV–0466, Complaint (M.D. Tenn. filed May 16, 2011). While the first of these two actions appears to have been dismissed only without prejudice, [15] the second of these two actions is still pending in the Middle District of Tennessee-contributing to the waste of judicial resources, and running the risk of inconsistent rulings and preclusion by collateral estoppel. [16] The Court notes that in May 20011 an Order was issued in the second action, referring the case to a magistrate judge for a review of whether the action is frivolous. *Deuel v. Dalton,* 11–CV–

0466, Order (M.D. Tenn. filed May 18, 2011) (Trauger, J.). As a result, this action is dismissed based also on this alternative ground.

Fourth, Plaintiffs' claims against New York State Unified Court System and Cholakis are barred by the Eleventh Amendment and the doctrine of absolute immunity. [17] Similarly, Plaintiffs' claims against Defendant Danaher are barred by the doctrine of qualified immunity (if not also the doctrine of absolute immunity). Moreover, Plaintiffs' Complaint does not allege facts plausibly suggesting that Defendant Dalton is a state actor for purposes of 42 U.S.C. § 1983. Furthermore, Plaintiffs' Complaint does not allege facts plausibly suggesting the personal involvement of Defendants John and Jane Does 1–100 and ABC Corp's 1–100 in any of the violations alleged. (*See generally* Dkt. No. 1.) Finally, Plaintiffs' Complaint does not allege facts plausibly suggesting that Plaintiff Lorraine Deuel has standing to assert any claims in this action (or even that she bears any familial or custodial relationship to BMD). (*Id.*) [18] Simply stated, additional pleading defects plague Plaintiffs' claims against each of the Defendants in this action, as well as each of the claims asserted by Plaintiff Lorraine Deuel. As a result, this action is dismissed based also on this alternative ground.

Fifth, and finally, Plaintiffs' request for leave to amend their Complaint is denied because the numerous pleading defects in Plaintiff's Complaint are substantive rather than formal. [19] As a result, the Court sees no need to *sua sponte* grant Plaintiffs leave to amend those claims before it dismisses them. [20]

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Treece's Report–Recommendation (Dkt. No. 4) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is ***DISMISSED*** in its entirety.

*The Court certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from this Decision and Order would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 235523

Footnotes

1    *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2    *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

3    *See also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999); *Vargas v. Keane,* 93–CV–7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection

within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

4   *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept. 20, 2010 (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan.18, 2006) (Sharpe, J.).

5   *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous." [internal quotations marks omitted.] ).

6   *See Pino v. Ryan,* 49 F.3d 51, 54 (2d Cir.1995) ("Nothing ... suggests that an affirmative defense appearing on the face of a complaint may not be the basis for a *sua sponte* dismissal under section 1915(d) [section 1915(e) as amended] prior to service of the complaint."); *accord, Pratts v. Coombe,* 49 F. App'x 392, 393 (2d Cir.2003).

7   *See Bailey v. Johnson,* 846 F.2d 1019, 1021 (5th Cir.1988) (holding that a complaint that repeats pending or previously litigated claims "may be considered abusive" and dismissed under the authority of Section 1915[e] ); *Buckenberger v. Reed,* 10–CV–0856, 2010 WL 1552672, at *1 (E.D.La. Mar.16, 2010) (recommending dismissal of complaint asserting claims which were duplicative of those in a pending action as "malicious"); *Smith v. Ferrell,* 09–CV–0466, 2010 WL 653798, at *2–3 (S.D.Ala. Feb.18, 2010) (dismissing action because claims were duplicative of those in another pending action); *Williams v. Bunn,* 06–CV–0466, 2007 WL 1703816, at *2 (W.D.N.Y. Jun.7, 2007) (dismissing "religious claim" with prejudice because it was "repetitive of a claim twice brought previously and dismissed for plaintiff's failure to serve); *Hahn v. Tarnow,* 06–CV–12814, 2006 WL 2160934, at *1 (E.D.Mich. July 31, 2006) (dismissing complaint as "repetitive, malicious and frivolous, and duplicative"); *Blake v. Bentsen,* 95–CV–2227, 1995 WL 428694, at *2 (E.D.N.Y. Jul.11, 1995) (dismissing "repetitious litigation" as abusive and malicious); *Denton v. Hernandez,* 504 U.S. 25, 30, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (recognizing Congress's concern in 28 U.S.C. § 1915 that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.").

8   The Second Circuit affirmed the dismissal of an action which "substantially duplicate[d] the conspiracy claim asserted in a prior action, notwithstanding the fact that the the conspiracy claim in the first action was dismissed as insufficiently pleaded and plaintiff was afforded an opportunity to amend, because "[plaintiff's] recourse is to appeal that decision after judgment is entered in that case, not to file a duplicative second complaint." *Brown v. Plansky,* 24 F. App'x 26, 28 (2d Cir.2001).

9   The rule against duplicative litigation is distinct from, but related to, the doctrine of claim preclusion or *res judicata,* and the two doctrines serve some of the same policies. As the Supreme Court stated over 100 years ago in *United States v. The Haytian Republic,* 154 U.S. 118, 14 S.Ct. 992, 38 L.Ed. 930 (1894), "[T]he true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." *Id.* at 124.

10  *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

11  *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

12  It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

13  *See also Flemming v. Wurzberger,* 322 F. App'x 69, 71 (2d Cir.2009); *Curtis,* 226 F.3d at 138.

14    *See also* *Zerilli v. Evening News Ass'n,* 628 F.2d 217, 222 (D.C.Cir.1980); *Walton v. Eaton Corp.,* 563 F.2d 66, 70 (3d Cir.1977) (*en banc* ).

15    *Deuel v. Dalton,* 06–CV–0234, Memorandum and Order (M.D. Tenn. filed August 15, 2006) (Trauger, J.). *See also* *Hernandez v. Conriv Realty Assocs.,* 182 F.3d 121, 123 (2d Cir.1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

16    For example, both the second action and the action before this Court present claims against Frank Dalton, John and Jane Does 1–100, and ABC Corp's 1–100, for violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment (as well as fraud and conspiracy), arising from, *inter alia,* the unfavorable rulings Plaintiff Loriann Deuel received in child-custody proceedings in New York State court from 2002 to 2004 due to the alleged misconduct of Dalton, Family Court Judge Catherine Cholakis and Law Guardian Phillip J. Danaher. *See Deuel v. Dalton,* 11–CV–0466, Complaint, at 4–5, 9–12, 15–18, 30–32 (M.D. Tenn. filed May 16, 2011).

17    The Court notes that, in their Objections and Complaint, Plaintiffs' acknowledge that (1) their claims against Defendant Cholakis are barred by the doctrine of absolute immunity, and (2) their claims against Defendant New York State Unified Court System are based on their claims against Defendant Cholakis (pursuant to the doctrine of respondeat superior). (Dkt. No. 5, at 6; Dkt. No. 1, at 31.)

18    The Court notes that Plaintiffs' argument in their Objections that Lorraine Deuel was a party to "a recent appellate decision" is simply not sufficient to state the claims in question. (Dkt. No. 5, at 6.)

19    For example, lack of subject-matter jurisdiction and the expiration of the statute of limitations are substantive defects. *See* *U.S. ex rel. Phipps v. Comprehensive Comty. Dev. Corp.,* 152 F.Supp.2d 443, 455 (S.D.N.Y.2001) ("[I]t is not appropriate to grant Phipps's request [for leave to amend the Complaint] because the Court has determined that it does not have subject matter jurisdiction over this action."); *Chan v. Reno,* 916 F.Supp. 1289, 1302 (S.D.N.Y.1996) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. As will be discussed herein, [the proposed amended complaint] ... presents a non-justiciable claim and fails to present this Court with subject matter jurisdiction. Therefore, because [the proposed amended complaint] would be subject to a successful motion to dismiss ..., amendment would be futile."); *Grace v. Rosenstock,* 228 F.3d 40, 53 (2d Cir.2000) ( "Amendment would likely be futile if ... the claims the plaintiff sought to add would be barred by the applicable statute of limitations."); *accord, In re WorldCom, Inc. Securities Litigation,* 303 F.Supp.2d 385, 390 (S.D.N.Y.2004).

20    *See* *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (finding that denial of leave to amend is not abuse of discretion where amendment would be futile); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.") (citations omitted); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied"); *Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.").

---

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.    8